475 So.2d 1257 (1985)
ATS MELBOURNE, INC., d/b/a the Doll House IV, Appellant,
v.
CITY OF MELBOURNE, Florida, a Municipal Corporation, Appellee.
No. 85-356.
District Court of Appeal of Florida, Fifth District.
August 15, 1985.
Rehearing Denied September 25, 1985.
*1258 Richard L. Wilson, Orlando, and Joan H. Bickerstaff, Melbourne, for appellant.
James L. Reinman and Robert M. Moletteire of Reinman, Harrell, Silberhorn, Moule & Graham, P.A., Melbourne, for appellee.
COBB, Chief Judge.
ATS Melbourne, Inc., d/b/a The Doll House IV (Doll House), timely appeals a nonfinal order of the trial court granting a temporary injunction and prohibiting the appellant from further operation of its "adult entertainment facility" at its present location. On March 1, 1985, the appellant, Doll House, opened a topless bar in the City of Melbourne, and the City immediately *1259 filed suit, seeking to enjoin it from further operation at the particular location where it had opened. The City also filed a motion for temporary injunction, and an evidentiary hearing was held on March 7, 1985.
At the hearing, the parties stipulated that the Doll House was operating the topless bar in a zoning district which prohibited all-adult businesses. Under Ordinance No. 83-36, known as the zoning ordinance, the business was located in a "C-P" zone, whereas adult businesses in Melbourne are limited to "C-3" zones, and even to locate in a C-3 zone such businesses must obtain a "conditional use permit." There are three C-3 zones in Melbourne.
The zoning ordinance sets out detailed guidelines for the city council to follow in determining whether an adult entertainment facility should be granted a conditional use in a C-3 zone. Another part of the city code, Ordinance No. 84-30 (known as the "community standards" ordinance), purports to prohibit various conduct  exposure of genitals and female breasts, straddle dancing, certain types of touching, etc.  on premises where alcoholic beverages are sold or distributed. Ordinance No. 84-30, of course, is relevant only to C-3 zones where adult entertainment is permitted.
Evidence was adduced at the hearing that exposures, touching, and dancing proscribed by the provisions of Ordinance No. 84-30 occurred at the Doll House. Based on the evidence and stipulations, the trial court found that the defendant was operating an adult entertainment establishment in a C-P district in violation of the zoning ordinance, and was also violating Ordinance No. 84-30. Consequently, the defendant and its officers, agents and employees were preliminarily enjoined from operation of an adult entertainment facility in the C-P district of Melbourne, and from further engaging in the activities proscribed by Ordinance No. 84-30.
On appeal of this preliminary injunction, the appellant, Doll House, contends the Melbourne zoning ordinance is violative of its first amendment right to free speech. It argues that the Melbourne zoning ordinance, by requiring all adult businesses to obtain conditional use permits, and vesting unbridled discretion in the city council to deny them, is a device designed to totally prohibit adult businesses in Melbourne. The principal case relied on by the appellant is Schad v. Mt. Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). In Schad an adult bookstore situated in a commercially zoned area in the borough of Mt. Ephraim installed a coin-operated device allowing the customer to view a live, nude dancer behind a glass panel. The owners of the store were prosecuted because "live nude dancing" was not a permitted use in that zone. The state courts of New Jersey affirmed the convictions of the owners on the basis that this case involved zoning, not first amendment rights.
The United States Supreme Court set aside the convictions in Schad because the municipality had excluded all live entertainment, including nude dancing, from all zones in the city. Nudity alone, the court noted, did not place the entertainment outside the mantle of the first amendment. Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). The first amendment, said the court, requires a sufficient justification for exclusion of a broad category of protected expression as a permitted use throughout an entire city. Such justification did not appear on the face of the Mt. Ephraim ordinance. Schad reaffirmed the holding in Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) holding that adult entertainment facilities, otherwise protected by the first amendment, can be reasonably regulated by zoning so long as the burden imposed on first amendment interests is "incidental and minimal." Mt. Ephraim failed to justify the substantial restriction it placed on all commercial live entertainment, nor was there any evidence that the particular type of entertainment at issue was available in reasonably nearby areas.
Unlike the factual background in Schad, there was no evidence introduced in the *1260 instant case to show that the number of locations where adult businesses can operate in Melbourne has been significantly restricted by the extant zoning. See Young, supra[1]. Nor has the Doll House presented evidence before the trial court that it would be wrongfully rejected, via the "conditional use" artifice, if it attempted to locate in a C-3 zoning area, nor even that it wishes to locate in such an area. The Doll House has not applied for a permit to operate its business in an area zoned for adult entertainment, nor has it sought a zoning variance or change of zoning in the C-P zone in which it unilaterally has elected to locate.
It may well be that the "conditional use" provision pertaining to adult businesses in a C-3 zone is unconstitutional because it would permit the exercise of unbridled discretion by the Melbourne City Council. See Effie, Inc. v. City of Ocala, 438 So.2d 506 (Fla. 5th DCA 1983), review denied, 444 So.2d 416 (Fla. 1984). Nevertheless, this case does not concern a C-3 zone, but a C-P zone. As such, the "conditional use" provision is irrelevant to this case. If it is invalid, as contended by appellant, that merely means it cannot be utilized by the City to prohibit the Doll House from operating in a C-3 zone  which the Doll House is not attempting to do. It does not mean the Doll House is immune from all zoning provisions within the municipality of Melbourne.
In part one of the plurality opinion of Young, with five justices concurring (Stevens, Burger, White, Rehnquist and Powell), it was held that a defendant whose rights have not been affected by a statute purporting to prohibit protected speech normally lacks standing to challenge the constitutionality of that statute. The exception to this traditional rule of standing occurs where "the very existence of some statutes may cause persons not before the Court to refrain from engaging in constitutionally protected speech or expression." 427 U.S. at 60, 96 S.Ct. at 2447. The court continued:
Nevertheless, if the statute's deterrent effect on legitimate expression is not `both real and substantial,' and if the statute is `readily subject to a narrowing construction by the state courts,' (citation omitted), the litigant is not permitted to assert the rights of third parties.
427 U.S. at 60, 96 S.Ct. at 2447.
We are not persuaded by this record that Melbourne's zoning ordinance will have a significant deterrent effect on first amendment expression, as exercised through nude or topless dancing, in the City of Melbourne. Three zones are provided for adult entertainment within the city. Those third parties operating, or attempting to operate, such adult entertainment facilities in C-3 zones in Melbourne are free to seek a "narrowing construction" of Melbourne's zoning ordinance, including the "community standards" ordinance, by the state courts of Florida. Therefore, we should not adjudicate the hypothetical claims of those persons, since they are not before this court on this appeal. The exception to the general rule of standing noted in Young is not applicable here, just as it was not applicable there.
Based on the record before us, the zoning ordinance of Melbourne is facially valid, and there has been no evidentiary showing at this point that it has been unconstitutionally applied against the appellant. Therefore, the preliminary injunction is sustained in regard to the location of the Doll House. We do not consider the remaining aspects of the injunction because the appellant, having failed to surmount the zoning barrier, lacks standing to challenge the validity of city ordinances pertaining to a zone (C-3) where it does not operate or plan to operate. Cf. Del Percio v. The City of Daytona Beach, 449 So.2d 323 (Fla. 5th DCA 1984).
AFFIRMED.
*1261 FRANK D. UPCHURCH, Jr., J., concurs.
SHARP, J., concurs in part, dissents in part, with opinion.
SHARP, Judge, concurring in part; dissenting in part.
I concur with the majority opinion insofar as it sustains the preliminary injunction, which requires appellant to cease conducting an "all-adult business" in a "C-P" zone. However, in view of this court's holding in Del Percio v. The City of Daytona Beach, 449 So.2d 323 (Fla. 5th DCA 1984),[1] I would strike those additional portions of the preliminary injunction which prohibit appellant, its officers, agents, servants and employees from violating all of the provisions of the City of Melbourne's Ordinance Number 84-30, section 10.5. This ordinance prohibits some dress and conduct which we held in Del Percio could not be constitutionally forbidden by a city ordinance. The ordinances in the two cases contain identical language regarding the conduct and dress involved in Del Percio, and in fact the preliminary injunction goes even further by forbidding the "actual or simulated exposure to public view of the human breast... ."
NOTES
[1] The appellant concedes that a municipality may zone an adult business differently from a non-adult business, based on Young, so long as that zoning does not operate to exclude such businesses altogether and does not seriously restrict their number or accessibility.
[1] Although I dissented in Del Percio v. The City of Daytona Beach, 449 So.2d 323 (Fla. 5th DCA 1984), I think we are bound by its holding.