NESBITT, Judge.
A real estate agent appeals a final order of the Department of Business and Professional Regulation, Division of Real Estate, finding that the agent had violated section 475.25(l)(b), Florida Statutes (1995), suspending her real estate license for two years, sentencing her to one year of probation, and fining her $1000. On the following analysis we reverse.
In the aftermath of Hurricane Andrew, Steve Ellis Times and Betty A. Brinson sought to rent a place to five. The Banais own a house in Hollywood, which they rented to others with the assistance of Manhattan Group Real Estate, Inc. (Manhattan). On September 30, 1992, Times responded to a newspaper advertisement for the Banais’ house. Licensee Sylvia M. Arias, a real estate agent employed by Manhattan, showed Times the house. Times indicated that he wanted to rent the property. Arias told Times she had to call the Banais prior to finalizing the rental. Arias telephoned Ms. Banai, and told her she found a nice couple to rent the house. The conversation that followed included, in part,:
Ms. Banai: Are they Hispanic?
Ms. Arias: No.
Ms. Banai: Are they Black?
Ms. Arias: Yes.
Ms. Banai: No, I cannot rent the house to black people because I live in part of the house and because of what the neighbors will say about something like that.
Ms. Arias: We [are] not supposed to discriminate that way.
Ms. Banai: Look for someone else.
Arias then called Brinson, and stated that she was sorry but the couple would not be able to rent the property because the owners “didn’t want persons of color in their house.” Brinson related the information to Times. When Times called Arias, she also told Times that the owner did not want “someone of a different race” in the house. Arias offered to help the couple find other housing, and recommended that Times hire a lawyer.
In February 1995, a HUD administrative law judge issued an order requiring the Ba-nais to pay a $10,000 civil penalty to HUD and compensatory damages of $35,000 each to Brinson and Times. The HUD judge found Arias in violation of federal housing law,[1] and required her to attend fair housing training, and fined her $100.
*657 In November 1996, the Department of Business and Professional Regulation, Division of Real Estate, filed an administrative complaint against Arias, claiming a violation of section 475.25(l)(b) Florida Statutes (1995)[2]. The administrative complaint alleged that Arias violated a duty imposed on her by federal and Florida law by facilitating and participating in a lessor’s refusal to rent to prospective lessees, thereby making a dwelling unavailable to prospective lessees because of their race and color.
Arias did not dispute the allegations of fact contained in the complaint. An informal hearing was conducted. Arias was not represented by counsel. The Commission issued a final order finding that Arias had violated section 475.25(l)(b), suspending her real estate license for two years, sentencing her to one year of probation, and fining her $1000. This appeal followed.
Because we find one issue raised by Arias to be correct and dispositive, we will address only that point. The statute at issue, section 475.25(l)(b) provides:
(1) The commission may deny an application for licensure, registration, or permit, or renewal thereof; may place a licensee, registrant, or permittee on probation; may suspend a license, registration, or permit for a period not exceeding 10 years; may revoke a license, registration, or permit; may impose an administrative fine not to exceed $1,000 for each count or separate offense; and may issue a reprimand, and any or all of the foregoing, if it finds that the licensee, registrant, permittee, or applicant:
(a) Has violated any provision of s. 455.227(1) or of s. 475.42.
(b) Has been guilty of fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing by trick, scheme, or device, culpable negligence, or breach of trust in any business transaction in this state or any other state, nation, or territory; has violated a duty imposed upon her or him by law or by the terms of a listing contract, written, oral, express, or implied, in a real estate transaction; has aided, assisted, or conspired with any other person engaged in any such misconduct and in furtherance thereof; or has formed an intent, design, or scheme to engage in any such misconduct and committed an overt act in furtherance of such intent, design, or scheme. It is immaterial to the guilt of the licensee that the victim or intended victim of the misconduct has sustained no damage or loss; that the damage or loss has been settled and paid after discovery of the misconduct; or that such victim or intended victim was a customer or a person in confidential relation with the licensee or was an identified member of the general public. (Emphasis added.)
Section 455.2273, Florida Statutes (1997), provides:
1) Each board, or the department when there is no board, shall adopt, by rule, and periodically review the disciplinary guidelines applicable to each ground for disciplinary action which may be imposed by the board, or the department when there is no board, pursuant to this part, the respective practice acts, and any rule of the board or department.
*658 (2) The disciplinary guidelines shall specify a meaningful range of designated penalties based upon the severity and repetition of specific offenses, it being the legislative intent that minor violations be distinguished from those which endanger the public health, safety, or welfare; that such guidelines provide reasonable and meaningful notice to the public of likely penalties which may be imposed for proscribed conduct; and that such penalties be consistently applied by the board.
(3) A specific finding of mitigating or aggravating circumstances shall allow the board to impose a penalty other than that provided for in such guidelines. If applicable, the board, or the department when there is no board, shall adopt by rule disciplinary guidelines to designate possible mitigating and aggravating circumstances and the variation and range of penalties permitted for such circumstances.
(4) The department must review such disciplinary guidelines for compliance with the legislative intent as set forth herein to determine whether the guidelines establish a meaningful range of penalties and may also challenge such rules pursuant to s. 120.56.
(5) The administrative law judge, in recommending penalties in any recommended order, must follow the penalty guidelines established by the board or department and must state in writing the mitigating or aggravating circumstances upon which the recommended penalty is based. (Emphasis added.)
Arias maintains that the agency failed to comply with the legislative requirement that there be penalty guidelines in place, so as to alert licensees of proscribed actions and so as to ensure consistency in penalties imposed. We agree.
Through section 455.2273, the legislature has acknowledged the importance and necessity of disciplinary guidelines. Florida Administrative Procedure Section 61J2-24.001 provides the guidelines for disciplinary action by the Real Estate Commission. Disciplinary Guideline 6IJ2-24.001, provides in pertinent part:
VIOLATIONS
[[Image here]]
(c) 475.25(l)(b) Guilty of fraud, misrepresentation, concealment,false promises,false pretenses, dishonest dealing by trick, scheme or device, culpable negligence or breach of trust.
[[Image here]]
[[Image here]]
(c) In the case of fraud, misrepresentation and dishonest dealing, the usual action of the Commission shall be to impose a penalty of revocation. In the case of concealment, false promises and false pretenses, the usual action of the Commission shall be to impose a penalty of a 3 to 5 year suspension and an administrative fine of $1,000. In the case of culpable negligence and breach of trust, the usual action of the Commission shall be to impose a penalty from a $1,000 fine to a 1 year suspension.
Clearly, no guidelines have been established for instances of violation of “a duty imposed ... by law.”
In Morey’s Lounge, Inc. v. Department of Business and Professional Regulation, 673 So.2d 538, 540 (Fla. 4th DCA 1996) the Fourth District observed:
State criminal statutes may be held void for vagueness under the due process clause where they either: (1) fail to give fair notice to persons of common intelligence as to what conduct is required or proscribed; or (2) encourage arbitrary and erratic enforcement. State v. Moo Young, 566 So.2d 1380, 1381 (Fla. 1st DCA 1990); See Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).
The court in Morey’s concluded that a statute authorizing the revocation of a liquor license for violation of any laws of the state or the United States was not unconstitutional for failure to give fair notice, and was not so vague as to deprive notice of proscribed conduct to persons of ordinary intelligence, and did not give the Department of Business and Professional Regulation unbridled discretion. However, in so concluding, the Morey’s court specifically observed:
... the alleged acts in this case are specifically set out in ... regulations providing notice to Morey’s that such acts under Chapter 796 are subject to the penalties set forth.
Morey’s, 673 So.2d at 540.
Morey’s observed that as to the potential for arbitrary enforcement:
*659 [W]here the legislature authorizes an agency of the state to enforce a statute enacted under the police power, the legislature is not required to provide specific rules to cover all conceivable situations that may confront the agency. The discretion granted an agency in these situations must, however, be “sufficiently governed by the legislative standards as to constitute a judicially reviewable discretion.” (Emphasis added.)
Morey’s, 673 So.2d at 540, citing Astral Liquors, Inc. v. Department of Business Regulation, 463 So.2d 1130, 1131-32 (Fla.1985) (citations omitted).
We conclude that the statutory language at issue in the instant case, combined with the total lack of guidelines for enforcement, left the licensee in a predicament ripe for arbitrary and erratic enforcement, and obviously provided no standards sufficiently governed by the legislature as to constitute a judicially reviewable discretion.
Considering section 455.2273, we agree with the licensee’s position that the legislature could not have intended section 475.25(l)(b) to be a carte blanche for the Commission to suspend real estate professionals license for the violation of any legal duty without meaningful notice of likely penalties and without a mechanism in place to ensure that such penalties would be consistently applied by the Commission. There being no specified penalty for a violation of the type occurring here, that unfulfilled requirement negates the Commission’s position that it retained unlimited discretionary power as to the penalty imposed.
In Florida Real Estate Comm’n v. Webb, 367 So.2d 201 (Fla.1978), the supreme court held that “so long as the penalty imposed is within the permissible range of statutory law, the appellate court has no authority to review the penalty unless agency findings are in part reversed.”
However section 455.2273 was created in 1986 and affects violations occurring after January 1,1987. As stated above, it requires boards to adopt, by rule, disciplinary guidelines which will give the public meaningful notice of penalties which are likely to be imposed for various violations. The board is allowed to impose a penalty outside the guidelines, if it states specific findings of mitigating or aggravating circumstances which justify the departure. See Criminal Justice Standards & Training Comm’n v. Bradley, 596 So.2d 661, 663 (Fla.1992)(hold-ing as long as the statute under which a professional agency operates provides guidelines for imposing penalties, the agency has the discretion to decide the penalty to be imposed, and the district court should not second guess the agency’s decision). On the other hand, when no such guidelines have been enumerated, we can only conclude that the agency’s decision cannot stand. See Clark v. Department of Professional Regulation, 463 So.2d 328, 336 (Fla. 5th DCA 1985)(Upchurch Jr., J., dissenting).
Here, the fact that one commissioner herself questioned how the licensee should have acted, demonstrated that the licensee’s predicament was one open to a varied response in terms of the severity of the penalty to be imposed.
Commissioner:
I can’t see how she [Arias] could help but answer and tell truthfully the facts when she was asked by the owner.
FREC Advisor:
If I might respond to that. An agent is required to lawfully obey the principal, any questions that are asked or any instructions given. They are not required to break the law. And even the fiduciary duty would stop at that point, when they’re asked a question regarding race or sex or whatever the discriminatory category may be. The agent can lawfully refuse to answer because that is an unlawful question being asked. You’re only required to act in a lawful manner. That’s how a licensee can avoid a response to that question.
At the hearing before the commission, the licensee explained in pertinent part:
So I referred to the owner that I found a very nice couple, that they want to rent the house, and they qualify and they have the money. She asked me, are they Hispanic? I say, no. She say, are they black? I say, yes. Then she says, I cannot rent the *660 house to a black person because I live in part of the house.
I went to my broker. I explained to her. She told me to call the Times — that was the person that went to see the house— and notify him about the decision of the owner. When I was talking to the owner, I told her that we were going to withdraw from the relation because we were not supposed to discriminate, and I didn’t see the fact that why she didn’t rent the house to this person.
After that, my broker wrote a letter to the Florida Real Estate Commission explaining the situation.
In pleading her case, the licensee went on to tell the commissioners:
When I was in HUD, they didn’t know what I was there for. They told me that over there they was a lot of people just to learn how not to discriminate. In my opinion, what I did was not allow somebody to be discriminated [sic].
Nonetheless, with no guidelines in place for the type of infraction charged, and where the only hearing officer hearing the case— the administrative law judge in the HUD case, determined the appropriate action was for fair housing training and a $100 fine, the Commission nonetheless ordered this licensee’s livelihood suspended for two years, in addition to the above mentioned probation and fine. While we do not suggest that the Commission was obligated to follow the HUD determination, the order under review gave no indication why the penalty at issue was being imposed, a general requirement when an agency increases a hearing officer’s recommendation. The transcript of the informal hearing reflects the Commission members’ frustration with the licensee community as a whole, in not grasping the appropriate actions to be taken under the Fair Housing Law. We can only suggest their determination to ensure compliance with that law, while laudable, would better be directed to providing meaningful penalty guidelines for such violations as well as increasing the effort to educate the real estate professional community.
Section 120.68, Florida Statutes (1997), provides for judicial review of agency action. That section provides in pertinent part:
(1) A party who is adversely affected by final agency action is entitled to judicial review.
[[Image here]]
(6)(a) The reviewing court’s decision may be mandatory, prohibitory, or declaratory in form, and it shall provide whatever relief is appropriate irrespective of the original form of the petition. The court may:
1. Order agency action required by law; order agency exercise of discretion when required by law; set aside agency action; remand the case for further agency proceedings; or decide the rights, privileges, obligations, requirements, or procedures at issue between the parties; and
2. Order such ancillary relief as the court finds necessary to redress the effects of official action wrongfully taken or withheld.
(b) If the court sets aside agency action or remands the ease to the agency for further proceedings, it may make such interlocutory order as the court finds necessary to preserve the interests of any party and the public pending further proceedings or agency action.
[[Image here]]

(7) The court shall remand a case to the agency for further proceedings consistent with the court’s decision or set aside agency action, as appropriate, when it finds that:

[[Image here]]

(e) The agency’s exercise of discretion was:

1. Outside the range of discretion delegated to the agency by law;

2. Inconsistent with agency rule;
3. Inconsistent with officially stated agency policy or a prior agency practice, if deviation therefrom is not explained by the agency; or
A Otherwise in violation of a constitutional or statutory provision;
[[Image here]]
*661 (Emphasis added.)
Absent the penalty guidelines required by law, in accordance with section 120.68, we can only conclude that the order under review must be reversed. This real estate licensee who was subject to disciplinary proceedings was entitled to notice of all matters that the Commission would consider, including the likely range of the penalty to be imposed. Furthermore, because any future creation and application of penalty guidelines and application of those guidelines to this litigant would constitute an ex post facto application of law, remand for further agency action is not a viable option. See Linkous v. Department of Professional Regulation, 417 So.2d 802 (Fla. 5th DCA 1982)(holding penalties which were provided for by statute which became effective after conduct which was basis of disciplinary action against broker could not be invoked).
Accordingly, the order under review is reversed.

. The administrative law judge in the HUD action concluded as to Arias:
*657 By answering Ms. Banai's inquiry concerning Complainants' race and/or color, Ms. Arias violated 42 U.S.C. §§ 3604(a) and 3605(a). She facilitated and participated in Ms. Ba-nai’s refusal to rent to Complainants and thereby made a dwelling "unavailable ... because of race [and] color." 42 U.S.C. § 3604(a). Moreover, Ms. Arias, as a person whose business includes engaging in real estate transactions, facilitated and participated in discriminating against Complainants by "making [un]available such a transaction” because of their race and color. 42 U.S.C. § 3605(a). I adopt the reasoning set forth in Zuch v. Hussey, 394 F.Supp. 1028 (E.D.Mich.1975), aff'd, 547 F.2d 1168 (6th Cir.1977), a case involving blockbusting by real estate agents. In that case the court held that it made no difference that the owner, not the agent, had initially broached the subject of race. The court stated that "any action by a real estate agent which in any way impedes, delays, or discourages on a racial basis a prospective home buyer from purchasing housing is unlawful.” Id. at 1047. (Footnotes deleted.)

. The initial complaint against Arias also charged a violation of section 455.227, Florida Statutes (1995), however the Commission’s final order found a violation of section 475.25(l)(b), Florida Statutes (1995), alone.